# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GORDON M. PRICE,                                )
2715 George Washington Memorial Highway         )
Yorktown, VA  23693                             )
                                                )
        Plaintiff,                        )
                                                )
    v.                                    )     Case No. _____
                                                )
WILLIAM BARR, in his official capacity as       )
Attorney General of the United States of America )
United States Department of Justice             )
950 Pennsylvania Avenue, NW                      )
Washington, DC  20530                           )
                                                )
                                                )
DAVID BERNHARDT, in his official capacity as    )
Secretary of the Department of the Interior     )
of the United States of America                 )
Department of the Interior                      )
1849 C Street, NW                               )
Washington, DC  20240                           )
                                                )
DAVID VELA, in his official capacity as         )
Deputy Director Exercising the Authority        )
of Director of the National Park Service        )
of the United States of America                 )
National Park Service                           )
1849 C Street, NW                               )
Washington, DC  20240                           )
                                                )
        Defendants.                       )

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

    1.    This action challenges the constitutionality of Section 100905 of Title 54 of the

United States Code governing fees for commercial filming within National Park Service lands,

54 U.S.C. § 100905, and its implementing regulations at 43 C.F.R. Part 5 and 36 C.F.R. § 5.5.

The statute provides that the Secretaries of Agriculture and the Interior "shall require a permit"

and "shall establish a reasonable fee for commercial filming activities or similar projects on

Federal lands," which they have implemented by adopting permitting and fee requirements for commercial filming activities, as well as certain still photography activities, on the federal lands under their respective jurisdictions. Violations of the permit and/or fee requirements fall under federal criminal law and are subject to penalties administered by federal law enforcement.

2.     Section 100905 is facially unconstitutional because it targets activity protected by the First Amendment and imposes content-based prior restraints. In particular, it singles out certain types of filming on federal lands and imposes both an advance permit requirement and a fee based on the type of content intended by the filmmaker. Its focus on the commercial nature of filming is not designed to serve any government interest in conservation or resource management, but to provide the government what it calls a "fair return" for use of lands for commercial filming and certain still photography. In doing so, the statute and rules violate very basic First Amendment principles.

3.     *First,* because the law requires certain filmmakers to obtain a permit before they may film on lands otherwise open to the general public, it imposes a prior restraint on freedom of speech and of the press, which is "the essence of censorship," *Near v. Minnesota*, 283 U.S. 697, 713 (1931), and "the most serious and the least tolerable infringement" of the First Amendment. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Such prior restraints bear "a heavy presumption against [their] constitutional validity," *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963), and nothing in the statute, or the agencies' implementation of it, purports to satisfy the extraordinary justifications required for a prior restraint.

4.     *Second*, the permitting system is akin to a system of press licensing, another basic violation of the First Amendment. In exercising any such authority, the government is prohibited from wielding arbitrary power, *e.g.*, *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750

(1988); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969), yet here the statute requires filmmakers—broadly defined as "commercial"—to obtain a government permit, but leaves it to the agencies to decide who is and who is not covered, authority they have carried out arbitrarily and thus unconstitutionally.

5.      **Third**, the statute on its face imposes distinctions by requiring advance permits for all "commercial motion picture photography" regardless of where it occurs.  It exempts still photography any "place where members of the public are generally allowed," unless it involves "models or props which are not part of the site's natural or cultural resources or administrative facilities," but states no explanation for this differential treatment.  The law is content-based both because it discriminates between commercial and non-commercial speech, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 573-74, 577-78 (2011), and because it cannot be justified without reference to the content of the regulated speech, *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015), or the identity of the speaker.  *Id*. at 2230.  The law is thus unconstitutional because it is neither supported by a compelling governmental interest nor the least restrictive means of advancing any such interest.  *Id*. at 2226; *McCullen v. Coakley*, 573 U.S. 464, 478 (2014).

6.      **Fourth**, distinguishing between speakers who must obtain a permit or pay fees based solely on the "commercial" nature of the proposed production is unconstitutional.  *See Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952).  *See also, e.g.*, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 789 (1985).  The First Amendment requires that the government demonstrate a compelling interest in licensing "commercial" filming, but the law at issue here is not supported by any such showing.

7.      **Fifth**, the First Amendment does not allow the government to raise revenue by imposing a tax on expressive activities, *Murdock v. Pennsylvania*, 319 U.S. 105, 113-14 (1943),

or by imposing inconsistent or discriminatory fees on them, *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 229 (1987), yet the permit and fee requirements here do precisely that, in a manner based on the content of expressive activity and on disparate treatment of speakers. Nothing in the statute, its legislative history, or the implementing rules justifies this scheme of differential fees.  This also violates the Equal Protection clause of the Fifth Amendment.

8.      Each of these constitutional failings was on display when the permitting and fee requirements were criminally enforced against Plaintiff here, an independent filmmaker.  He received a violation notice and was haled into federal court for failing to obtain a permit before filming portions of a film from areas open to the general public at the Yorktown Battlefield in Colonial National Historical Park under the jurisdiction of the National Park Service.  When Mr. Price challenged the statute and rules (and the citation issued him) under the First Amendment, the government moved to dismiss to avoid a court ruling on the law's constitutionality.  Given the law's criminal enforceability, it has a speech-chilling effect on those to whom it may apply, and is operating to impede Mr. Price's future productions.  As such, the government cannot be allowed to avoid review under the First Amendment.  For the reasons set out herein, it cannot do so, such that the Court should declare the law unconstitutional and enjoin its enforcement.

**PARTIES**

9.      Plaintiff Gordon M. Price is a part-time independent filmmaker who lives and works in Yorktown, Virginia.  Mr. Price filmed portions of a film on federal lands, and received a criminal citation for doing so without a permit.  He intends to film future movies on-location on federal lands, but is impeded in doing so by the permitting and fee regime challenged here.

10.      Defendant Attorney General William Barr heads the United States Department of Justice ("DOJ"), which is the agency of the United States government responsible for enforcing

federal criminal offences.  Defendant Barr has ultimate responsibility for supervising all operations and functions of the DOJ, including regarding decisions whether and how to criminally enforce federal laws.

11.     Defendant Secretary David Bernhardt heads the United States Department of the Interior ("DOI"), which is the agency of the United States government responsible for managing the country's federal lands and natural resources, including any conditions and requirements for their access and use.  The Office of the Secretary of DOI is responsible for implementing 54 U.S.C. § 100905, and for adopting, maintaining, and enforcing the rules adopted thereunder.

12.     Defendant Deputy Director David Vila is the official currently exercising the authority of the Director for the National Park Service ("NPS"), which is the component of the DOI responsible for care of the country's national parks.  The provisions of 36 C.F.R § 5.5 that implement 54 U.S.C. § 100905, and under which Plaintiff received a criminal violation notice, are NPS regulations.

## JURISDICTION AND VENUE

13.     This action arises under the United States Constitution, particularly the First Amendment.

14.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

15.     This Court has authority to grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, because the case presents an actual case or controversy within the Court's jurisdiction.

16.     This Court has authority to award attorneys' fees and costs pursuant to 28 U.S.C. § 2412(b).

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1).

## FACTUAL ALLEGATIONS

**A.      The DOI Commercial Filming Law**

18.      Public Law 106-206 (the "Act") authorized the Secretaries of the Interior and of Agriculture to require permits and to establish fees for commercial filming activities as well as certain still photography activities on federal lands under their respective jurisdictions. 16 U.S.C. § 460*l*-6d, Pub. L. No. 106-206, 114 Stat. 314 (2000).

19.      Section 460*l*-6d(a) provides that the Secretaries of Agriculture and of the Interior "shall require a permit" and "shall establish a reasonable fee for commercial filming activities or similar projects on Federal lands."

20.      Section 460*l*-6d(a)(1) specifies that the fee for commercial filming activities on federal lands "shall provide a fair return to the United States … based on … [t]he number of days the filming activity or similar project takes place," "[t]he size of the film crew," and "[t]he amount and type of equipment present," while also allowing the agencies to "include other factors in determining an appropriate fee as the Secretary considers necessary."

21.      The statute provides that neither a permit nor a fee is required for still photography if it takes place where members of the public are generally allowed, but permitting and fees may apply if still photography takes place at other locations where members of the public are generally not allowed, or where additional administrative costs are likely.  It also provides that fees are required for still photography that uses models or props which are not a part of the site's natural or cultural resources or administrative facilities.  *Id*. § 460*l*-6d(c).

22.      Under Section 460*l*-6d(e), all fees and costs collected under the statute are available for expenditure by the relevant agency Secretary without further appropriation.

23.     Public Law 113-287 moved Section 460*l*-6d's commercial filming permit and fee authority for purposes of the NPS to 54 U.S.C. § 100905, though the grants of authority in both Section 460*l*-6d(a) and Section 100905 are identical in substance.

24.     Neither Section 460*l*-6d(a) nor Section 100905 define "commercial filming activities," leaving it to the agencies to implement the law through their respective rules and directives.  They also do not define the "crew" whose size factors into the amount of the fee.

25.     The permitting and fee requirements of Section 460*l*-6d and Section 100905 are implemented substantively at 43 C.F.R. Part 43, which "covers commercial filming and still photography activities on lands and waters administered by the National Park Service, the Bureau of Land Management, and the U.S. Fish and Wildlife Service."  *Id*. § 5.1.

26.     Under 43 C.F.R. § 5.2, all commercial filming requires a permit, while still photography does not, unless the criteria specified in the statute are met; additionally, "[v]isitors do not require a permit for filming or still photography … unless the filming is commercial … or the still photography activity involves one of the criteria listed" in the statute and rule.

27.     Under 43 C.F.R. § 5.4, news-gathering that involves filming, videography, or still photography does not require a permit unless DOI determines it is necessary protect natural and cultural resources, to avoid visitor use conflicts, to ensure public safety, or to authorize entrance into a closed area, and even then is required only if having to obtain a permit "will not interfere with the ability to gather the news."  Further, all permits issued for news-gathering activities can include "only terms and conditions necessary to maintain order, ensure the safety of the public and the media, and protect natural and cultural resources" and they are "not subject to location fees or cost recovery charges."  *Id*.

28.     Permittees "must pay [] a location fee and reimburse … expenses," pursuant to which "commercial filming and still photography permits … require a … fair return to the United States." *Id*. § 5.8.  The fee is "in addition to any cost recovery," which must "reimburse … actual costs incurred" in processing permit requests and administering the permit, based on the agency's "direct and indirect expenses including, but not limited to, administrative costs for application processing, preproduction meetings and other activities, on-site monitoring of permit-ted activities, and any site restoration."  Permittees may also be required to obtain insurance that names the United States as an additional insured, a bond, and/or security in connection with the permitted activity, *id*. § 5.7, although the regulation does not specify when DOI or NPS will impose these requirements.

29.     Under 43 C.F.R. § 5.5, a permit will be denied for commercial filming and/or still photography on federal lands if it would, *inter alia*, adversely affect resources, public use of a site and/or public health and safety, or NPS's "values,"  Alternatively, conditions may be placed on the permit under 43 C.F.R. § 5.6.  Filming and still photography not subject to the permitting and fee requirements are not subject to these restrictions.

30.     The rules do not impose a deadline on the government for issuing a requested purpose, only that processing will occur in a "timely manner," without specifying how long a delay that may impose.  *Id*. § 5.9.

31.     Pursuant to the NPS rule at 36 C.F.R. § 5.5(a), commercial filming and still photography "are subject to the provisions of 43 CFR, part 5," and failure to comply with any provision thereunder "is a violation of" the rule.  36 C.F.R. § 5.5(a).  Such violations fall under federal criminal law and are subject to penalties.

32.     For purposes of these provisions, the agencies have defined "commercial filming" as "film, electronic, magnetic, digital, or other recording of a moving image by a person, business, or other entity for a market audience with the intent of generating income," which may include but is not limited to "feature film, videography, television broadcast, or documentary, or other similar projects."  43 C.F.R. § 5.12.  "News-gathering" means "activities carried out by a representative of the news media," with "news" defined as "information that is about current events or [] would be of current interest to the public, gathered by news-media entities."  *Id.*  The "news-media" are defined as including "television or radio stations broadcasting to the general public and publishers of periodicals (but only if such entities qualify as disseminators of 'news') who make their products available for purchase by or subscription by or free distribution to the general public."  *Id.*  Freelance journalists are regarded as working for a news-media entity only "if the journalist can demonstrate a solid basis for expecting publication through that entity" as to which a contract "would present a solid basis for such an expectation," though "past publication record" also "may" be considered.  *Id.*

33.     In implementing the statute, DOI stated that the statutory purpose was to allow the government "to collect a 'fair return' for the use of lands for commercial filming and certain still photography activities," and that it establishes no such requirements for filming or photography deemed "non-commercial."  *Commercial Filming and Similar Projects and Still Photography Activities*, 78 Fed. Reg. 52087, 52089 (2013).

34.     DOI also made clear that, under the statute, "[t]he basis for requiring a permit for commercial filming is the commercial nature of the project," not any potential damage to, or disruption of federal land, and that under the law, "[t]here is no basis for an exclusion based on crew size or amount of equipment."  *Id.* at 52090.

35.     In implementing the statute, DOI decided that although most news organizations generally are commercial actors, "news gathering should not be treated in the same manner as other commercial filming activities." *Id.* at 52091.  "Commercial filming," DOI concluded, include documentaries that may "convey information to the viewing public" like news, but that "are commercial in nature and generate income for those involved … and as such are subject to permit requirements" and the associated fees. *Id.* at 52090.

## B.      Plaintiff Gordon Price's Experience Under the Statute and Rules

36.     Plaintiff Gordon Price is a music store owner and part-time independent film-maker in Yorktown, Virginia.

37.     In 2018, Price and a colleague, James Person, released an independent feature film entitled *Crawford Road* about a stretch of road in York County, Virginia, that has long been the subject of rumors of hauntings and was the location of unsolved murders.  Price and Person filmed *Crawford Road* largely on weekends between February 2017 and August 2018.

38.     Price and Person filmed some *Crawford Road* scenes in areas open to the general public at about four locations within the Yorktown Battlefield in the Colonial National Historical Park, which is property under NPS jurisdiction.  Price neither sought nor received a permit from NPS before filming on the Battlefield.

39.     Price and Person shot one scene on the Battlefield in summer 2017, a second in summer 2018, and a third during a separate one-hour visit to a location on Crawford Road known as Crybaby Bridge.  No heavy equipment was employed (just a camera tripod and micro-phone), there were no film crews, no more than four people were present during any filmmaking session (except for a couple of observers at one of them), including both the filmmakers and actors.  Only the two filmmakers were present during the third brief shooting at Crybaby Bridge.

40.     *Crawford Road* premiered at the Boathouse Live Restaurant in Newport News, Virginia on October 17, 2018, with about 250 people in attendance, and it later ran at other venues in Hampton and Yorktown, Virginia.  The premiere garnered some local press coverage. *See, e.g.*, Sarah Fearing, *Details in this film came from WYDaily's story in March. 'Crawford Road' is showing on Halloween*, WYDAILY (https://wydaily.com/local-news/2018/10/31/details-in-this-film-came-from-wydailys-story-in-march-crawford-road-is-showing-on-halloween/).

41.     Local CBS television affiliate WTKR interviewed the filmmakers at Crybaby Bridge, after which additional showings of the film were booked.  *See* Rachael Cardin, *Dark Stories and Gruesome Murders: An Investigation into the Legend of Crawford Road,* WTKR NEWS, Nov. 14, 2018  (https://wtkr.com/2018/11/14/dark-stories-and-gruesome-murders-an-investigation-into-the-legend-of-crawford-road/).   On information and belief, WTKR did not obtain a permit or pay any fees to film the interview.

42.     *Crawford Road* also appeared on social media sites, where viewings increased after the press coverage.

43.     In December 2018, two NPS officers came to Price's music store and issued him a violation notice for failure to obtain a commercial filming permit under 36 C.F.R. § 5.5.  The "offense charged" was specified as "36 C.F.R. § 5.5(a)" and the "offense description" was "commercial filming without a permit."  The violation notice did not give Price the opportunity to directly pay a forfeiture amount, but rather stated "YOU MUST APPEAR IN COURT" and provided a court date of April 9, 2019.

44.     Price asked the NPS officers why his film was treated differently from numerous videos of paranormal activity from the same locations that appear on YouTube, and from the news interview he gave near Crybaby Bridge that appeared on WTKR, to which the officers

responded that the other activities were covered by the First Amendment, and the distinction turned on the commercial nature of *Crawford Road*.

45.     The officers told Price he could not apply for or receive a permit after-the-fact, and that he was required to appear in court to answer the charge as stated on the violation notice.

46.     After receiving the violation notice, Price canceled upcoming screenings of *Crawford Road* and reedited it to delete footage that had been taken on property covered by the charge.

47.     At the time he received the violation notice, Price had been in talks for a distribution deal for *Crawford Road*, but further discussions were suspended because of the pending charge.  Price still has been unable to obtain distribution for the film.

48.     After an initial postponement, Price appeared without counsel on the violation notice in the U.S. District Court for the Eastern District of Virginia, in Newport News, on June 11, 2019, intending to plead "no contest" to the charge, but was told he must plead either guilty or not guilty.

49.     Price reluctantly resolved to plead guilty to put the matter behind him, but the court declined to accept his guilty plea and advised Price to obtain counsel before entering a formal plea.

50.     After retaining counsel, Price filed a motion on July 31, 2019, to dismiss the criminal action on grounds that Section 100905 and the DOI rules implementing it are facially unconstitutional and that issuance of the violation notice, and the attempt to enforce it, violated his First Amendment rights.

51.     Rather than oppose Price's motion to dismiss, the government, represented by the United States Attorney's Office within DOJ, filed its own motion to dismiss, stating that it "does

not wish to pursue … an evidentiary hearing in this criminal case," and that it did not "believe that the interests of justice are served by pursuing this prosecution."

52.     Despite seeking to avoid both proceeding with the prosecution and a judicial determination of the constitutionality of its actions, statute and rules, the government expressed its belief that the law is not subject to strict scrutiny because it is content-neutral, which was its only argument in support of the licensing regime.  In doing so, the government underscored that "[a]ll commercial filming requires a permit," that DOI's Secretary "shall require a permit and shall establish a reasonable fee for commercial filming activities," and that "[f]ailure to comply with any provision of 43 CFR part 5 is a violation."  Moreover, the government did not suggest in any way that it would refrain from issuing further violation notices to Mr. Price if he films on federal land in the future.

53.     Price responded to the government's request to dismiss the violation notice by asking the court to make findings and recommendations pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b) that the violation notice constituted a violation of his First Amendment rights, and that 54 U.S.C. § 100905 be declared unconstitutional as a content-based prior restraint of freedom of speech and of the press.

54.     Price submitted a declaration with his response, stating that he had resumed his filmmaking activities, but was being impeded by the permitting and fee requirements.  He indicated that he was working on a film that was to include a re-creation of the Saltville Massacre that occurred on October 3, 1864, in Saltville, Virginia, which would entail filming on property under NPS jurisdiction.  In preparation for the film, Price had scouted locations that included the Yorktown Battlefield and the Manassas National Battlefield.  However, he did not film at either site because of concern about additional citations under 54 U.S.C. § 100905, 43

C.F.R. Part 36, and/or 36 C.F.R. § 5.5.  Without clarification of the legality of the permitting and fee requirements, Price has avoided filming on property under NPS jurisdiction.

55.     On November 1, 2019, the District Court issued an order dismissing the violation notice against Price.  It declined to issue any ruling on the constitutionality of the statute or rules, concluding it lacked jurisdiction to do so.  The court observed that Price was not without a remedy, because he could assert his constitutional claims in a civil action.  *United States v. Price*, No. 4:19-po-180-DEM (E.D. Va. Nov. 1, 2019).

## CLAIMS FOR RELIEF

### COUNT I
### Prior Restraint Under the First Amendment

56.     Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

57.     Filming and photography by private parties on federal lands maintained by the NPS constitute expressive activity safeguarded by protections afforded to freedom of speech and freedom of the press under the First Amendment to the United States Constitution.  *Kaplan v. California*, 413 U.S. 115, 119 (1973) (collecting cases); *Glik v. Cunniffe*, 655 F.3d 78, 82-85 (1st Cir. 2011); *Leigh v. Salazar*, 677 F.3d 892 (9th Cir. 2012); *Nicholas v. Bratton*, 376 F. Supp. 3d 232 (S.D.N.Y. 2019).

58.     Under 54 U.S.C. § 100905, 43 C.F.R. § 5.2, and 36 C.F.R. § 5.5, all commercial filming and certain still photography require a permit and payment of a fee before filming and/or photography may commence.

59.     A permitting requirement is a prior restraint on speech and therefore bears a heavy presumption against its constitutionality.  *Women Strike for Peace v. Hickel*, 420 F.2d 597, 604 (D.C. Cir. 1969) (Wright, J., concurring) (per curiam).  The presumptive invalidity and

offensiveness of advance notice and permitting requirements stem from the significant burden they place on free speech.

60.     The permitting and fee requirements thus constitute a prior restraint of speech that is presumed unconstitutional, and thereby violate the First Amendment, which prohibits the making of any law "abridging the freedom of speech."

61.     As a result of operation of the statute and rules, Plaintiff and others similarly situated with him have suffered and continue to suffer irreparable harm through the deprivation of rights to freedom of speech and freedom of the press under the First Amendment to the Constitution.

## COUNT II
### Unconstitutional Licensing Regime Under the First Amendment

62.     Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

63.     The provisions of 54 U.S.C. § 100905, 43 C.F.R. Part 5, and 36 C.F.R. § 5.5 operate as a licensing regime that prohibits commercial filmmaking and certain still photography unless those wishing to engage in such expressive activity first secure a permit and pay a fee to the government, thereby establishing a government precondition to that expressive activity.

64.     This licensing regime distinguishes between and subjects to differential treatment filmmakers deemed "commercial" and those who are not, without any regard to whether they impose the same, or differing burdens in their use of federal lands.

65.     The statute does not define "commercial filmmaking" for these purposes in 54 U.S.C. § 100905 or elsewhere, but instead affords DOI unbridled discretion to decide who is and who is not covered by the permitting and fee requirements.

66.     Laws that subject First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, are unconstitutional.  *Shuttlesworth*, 394 U.S. at 150-51.

67.     In carrying out its statutory obligations under 54 U.S.C. § 100905, DOI has, in promulgating 43 C.F.R. Part 5 and 36 C.F.R. § 5.5, done so in an arbitrary and unconstitutional manner by, among other things, generally excluding "news-gathering" from the permitting and fee requirements, regardless of whether it is commercial in nature, and by requiring permits and fees for filmmakers not engaged in news-gathering even where they impose no different burdens or costs in their use of federal lands from those engaged in news-gathering.  While the First Amendment would bar the government from imposing permit and fee requirements on news-gathering activities, it likewise prohibits the government from arbitrarily deciding which activities are exempt, and from discriminating against non-news related filmmaking.

68.     The First Amendment prohibits discrimination based on the content of speech or the identity of the speaker, *Reed*, 135 S. Ct. at 2227, 2230, including but not limited to the differential treatment of commercial and non-commercial speakers and speech.  *IMS Health*, 564 U.S. at 573-74, 577-78.

69.     The permitting and fee requirements constitute a licensing regime that affords unbridled discretion to regulators and discriminates on the basis of speaker and the content of speech, and thereby violate the First Amendment, which prohibits the making of any law "abridging the freedom of speech, or of the press."

70.     As a result of operation of the statute and rules, Plaintiff and others similarly situated with him have suffered and continue to suffer irreparable harm through the deprivation

of rights to freedom of speech and freedom of the press under the First Amendment to the Constitution.

## COUNT III
### Content-Based Regulation That Fails Strict Scrutiny Under the First Amendment

71.     Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

72.     The government bears the burden of justifying any regulation of expressive activity on federal lands open to the public.  Any such restriction on speech must serve a substantial public interest and must be narrowly tailored and applied so as not to burden more speech than necessary.

73.     The provisions of 54 U.S.C. § 100905 require an advance permit and payment of fees for all "commercial motion picture photography" regardless of where it occurs, but imposes no such requirements either on non-commercial filming, or on still photography that "takes place where members of the public are generally allowed" unless it involves "models or props which are not part of the site's natural or cultural resources or administrative facilities."

74.     Further, the regulations implementing 54 U.S.C. § 100905, 43 C.F.R. Part 5, and 36 C.F.R. § 5.5 require an advance permit and payment of fees for commercial filming but not for news-gathering, even if the latter is conducted by commercial enterprises.

75.     The statute provides no explanation for these distinctions, or for why commercial filming on federal lands that has no greater impact on them than news-gathering is subject to the permitting and fee regime while news-gathering is not, or for why commercial filming is covered but non-commercial filming is not.

76.     The statute and rules collect direct costs, where required, separately from the fee generally imposed, and thus the only justification that the statute asserts for collecting fees is "to collect a 'fair return' for the use of lands for commercial filming and certain still photography."

77.     As a general matter, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)).  "[R]egulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 S. Ct. at 2227; *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 811 (2000).  Such content-based restrictions of speech, enforced by criminal penalties, "have the constant potential to be a repressive force in the lives and thoughts of a free people." *Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004).

78.     "A law that is content-based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed*, 135 S. Ct. at 2228 (citation omitted).  The First Amendment "demands" that such restrictions "be presumed invalid, and that the Government bear the burden of showing their constitutionality." *ACLU*, 542 U.S. at 660 (citations omitted). To satisfy strict scrutiny, the government must prove the law is "narrowly tailored to promote a compelling Government interest," meaning it must directly advance the stated interest and be neither overinclusive nor underinclusive, and no "less restrictive alternative would serve the Government's purpose." *Playboy Entm't Grp.*, 529 U.S. at 813.

79.     The permitting and fee regime for commercial filmmaking fails strict scrutiny because it is not supported by a legitimate governmental interest nor can it directly advance the interest in providing a "fair return" given the scope of the statute and rules and their exclusions

and exceptions.  The government cannot meet its "heavy burden" under strict scrutiny, *Reno v. ACLU*, 521 U.S. 844, 879 (1997), unless it can show the permitting and fee regime restricts speech "no further than necessary."  *ACLU*, 542 U.S. at 666, and here the statute and rules uniquely burden commercial filming, even when it has no greater impact on federal lands or their administration than does other filming or photography.

80.    As a result of operation of the statute and rules, Plaintiff and others similarly situated with him have suffered and continue to suffer irreparable harm through the deprivation of rights to freedom of speech and freedom of the press under the First Amendment to the Constitution.

**COUNT IV**
**Unconstitutionally Overbroad and Underinclusive Regulation Under the First Amendment**

81.    Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

82.    The provisions of 54 U.S.C. § 100905, 43 C.F.R. Part 43, and 36 C.F.R. § 5.5 prohibit a substantial amount of protected expression.  They prohibit commercial filming on federal lands unless the speaker first obtains a permit and pays a fee, regardless of the burden or costs—if any—that the filming imposes on the site or the governmental unit charged with managing it.  The statute does not define "commercial filming," and the regulations define it based only on whether material filmed is intended for "a market audience" with the "intent of generating income," while at the same time excluding news-gathering even if conducted by commercial entities, and most photography.

83.    A law is "unconstitutional on its face if it prohibits a substantial amount of protected expression."  *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002); *Stevens*, 559 U.S. at 473.  Likewise, a law that targets speech is facially unconstitutional if there is a

"likelihood that the statute's very existence will inhibit free expression" by "inhibiting the speech of third parties who are not before the Court." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 799, 800 (1984).  "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963).  For that reason, "if the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, [it] must do so." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002).

84.    The permitting and fee regime is overbroad because it restricts expressive activity identified as "commercial filmmaking" even if it has no greater impact on federal lands and/or the administration of them than do news-gathering and still photography that is exempt from the permit and fee requirements.

85.    The permitting and fee regime is also under-inclusive in allowing news-gathering and still photography that can have the same impact on federal lands and/or the administration of them as does commercial filmmaking to proceed without a permit or paying a fee, while all commercial filmmaking must obtain a permit and pay a fee.  These exemptions from the permit and fee requirements are based on the content of speech and/or the identity of the speaker, and in particular, though not limited to, whether speech is non-commercial.

86.    As a result of operation of the statute and rules, Plaintiff and others similarly situated with him have suffered and continue to suffer irreparable harm through the deprivation of rights to freedom of speech and freedom of the press under the First Amendment to the Constitution.

## COUNT V
## Unconstitutional Regulatory Fees Under the First Amendment

87.     Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

88.     Under 54 U.S.C. § 100905, 43 C.F.R. Part 5, and 36 C.F.R. § 5.5, those who wish to engage in commercial filmmaking on federal lands, or to conduct still photography outside areas where members of the public are generally allowed and/or that uses models or props not part of the site's natural or cultural resources or administrative facilities, must apply for a permit to do so. and pay a fee to the government.

89.     Fees for commercial filming on federal lands are set by the Departments of the Interior and Agriculture based on the statutory criteria of "number of days the filming … takes place," "size of the film crew," and "amount and type of equipment," though the statute also allows the agencies to "include other factors in determining an appropriate fee."  54 U.S.C. § 100905(a).  A schedule posted by NPS lists fees for commercial filming ranging from $150 to $750 per day, and for still photography ranging from $50 to $250 per day, based on the size of the  "group"  involved.     www.nps.gov/aboutus/news/commercial-film-and-photo-permits.htm. The schedule does not indicate how to determine whether group size includes just those involved in operating film (or photography) equipment, those operating equipment and the subjects filmed or photographed, or equipment operators, subjects, and observers.  Because costs and burdens imposed on federal lands or on the government body that manages them are collected separately, these fees bear no connection to any such cost or burden.

90.     Under 54 U.S.C. § 100905, those engaged in non-commercial filming on public lands are not required to obtain a permit for doing so or to pay any fee, nor are those engaged in still photography from places where members of the public are generally allowed.

91.     The fees imposed under the statute and its implementing regulations are separate from the collection of any costs incurred by the government as a result of filming activities or still photography.

92.     The fees imposed under the statute and rules are based not on costs incurred by the government but are directed to providing "a fair return to the United States" for the use of public lands for expressive purposes covered by the licensing regime.

93.     Fees collected by DOI under 54 U.S.C. § 100905 and its implementing rules are immediately available for expenditure by the Secretary without further appropriation or direction.

94.     The First Amendment does not permit the government to raise revenue by taxing expressive activities or by charging rights in excess of the cost of administering a legitimate regulation. *Murdock*, 319 U.S. at 113-14; *Sentinel Commc'ns Co. v. Watts*, 936 F.2d 1189, 1205 (11th Cir. 1991).  Nor may the government impose inconsistent or discriminatory fees on First Amendment activities. *Arkansas Writers' Project*, 481 U.S. at 229.  Content-based taxes or fees are particularly suspect. *Simon & Schuster, Inc. v. Members of N.Y. Crime Victims Bd.*, 502 U.S. 105, 116 (1991).  Permit fees (and any costs) imposed must be content- and speaker-neutral, and must generally adhere to First Amendment requirements. *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992).

95.     Because costs of allowing commercial filming and still photography on federal lands are collected separately from the fees, because the fees are designed instead to ensuring a "fair return" to the government, and because of the discriminatory application of the fees among entities filming or photographing on federal lands, the fees imposed under 54 U.S.C. § 100905 and 43 C.F.R. Part 5 and 36 C.F.R § 5.5 are unrelated to the government's costs of the services

that benefit the filmmakers and photographers who are charged, and there is no link between how much different persons or entities must pay and the purported benefit conferred by the permit issued by NPS.

96.     The fees are consequently an unlawful tax on speech rather than fees incident to legitimate regulatory costs.

97.     As a result of operation of the statute and rules, Plaintiff and others similarly situated with him have suffered and continue to suffer irreparable harm through the deprivation of rights to freedom of speech and freedom of the press under the First Amendment to the Constitution.

## COUNT VI
**Unconstitutional Speaker Discrimination Under the First and Fifth Amendments**

98.     Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

99.     The permit and fee provisions of 54 U.S.C. § 100905, 43 C.F.R. Part 5, and 36 C.F.R. § 5 apply to some entities but not others based on the content of their speech and/or the identity of the speaker.

100.    Persons or entities who wish to engage in commercial filming on federal lands are required to obtain a permit and pay a fee, while those engaging in non-commercial filming or certain news-gathering activities for commercial purposes are not.  Similarly, persons or entities who wish to engage in commercial filming on federal lands are required to obtain a permit and pay a fee, while those engaging in still photography are not, provided certain conditions are absent.

101.    Persons or entities wishing to engage in commercial filming on federal lands are thus restricted in their ability engage in expressive activity even though there is no material

distinction between exempt and non-exempt speakers with respect to their impact on the federal lands they use.

102.    The First Amendment prohibits discrimination based on the content of speech or the identity of the speaker, *Reed*, 135 S. Ct. at 2227, 2230, including, but not limited to, differential treatment of commercial and non-commercial speakers and speech. *IMS Health*, 564 U.S. at 573-74, 577-78.

103.    The Fifth Amendment to the United States Constitution requires the government to treat similarly situated parties equally.  Where government classifications affect the exercise of fundamental rights, as does the permitting and fee regime here, any distinctions in the law are subject to strict constitutional scrutiny.

104.    Even where fundamental rights are not implicated, the Fifth Amendment requires regulatory classifications made by the federal government to be rationally related to the purpose of the regulation.  Any such classification must be reasonable, not arbitrary, and must rest upon some difference having a rational relationship to the regulation.

105.    The distinctions between persons and entities who are similarly situated with respect to any burden they may impose through their use of federal lands for filming or still photography have no essential nexus to the permit and fee requirements imposed by 54 U.S.C. § 100905, 43 C.F.R. Part 5, and 36 C.F.R. § 5.5.

106.    The permitting and licensing regime thus violates the Equal Protection Clause under either strict scrutiny or rational basis scrutiny.

107.    As a result of operation of the statute and rules, Plaintiff and others similarly situated with him have suffered and continue to suffer irreparable harm through the deprivation of rights under the First and Fifth Amendments to the Constitution.

## COUNT VII
### Declaratory Judgment Under 28 U.S.C. §§ 2201, 2202; and Fed. R. Civ. P. 57

108.    Plaintiff realleges and incorporates all previous paragraphs as if fully set forth herein.

109.    This action presents an actual case or controversy concerning 54 U.S.C. § 100905, 43 C.F.R. Part 5, and 36 C.F.R. § 5.5, their interpretation and implementation, and infringement of rights under the First Amendment.  Declaratory relief is therefore necessary and appropriate.

110.    Because the statute and rules violate the First Amendment concerning filming on federal lands maintained by NPS, Plaintiff asks for a declaration pursuant to 28 U.S.C. § 2201 that the permitting and fee requirements applicable to commercial filming are unconstitutional, invalid and unenforceable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gordon M. Price respectfully requests that this Court enter judgment in its favor and providing the following relief:

A.    A declaratory judgment stating that the requirements in 54 U.S.C. § 100905, 43 C.F.R. Part 5, and 36 C.F.R. § 5.5 that those engaged in "commercial filming" must obtain permits and pay fees are unconstitutional under the First and Fifth Amendments of the United States Constitution;

B.    A permanent injunction enjoining the permit and fee requirements for commercial filming in 54 U.S.C. § 100905, 43 C.F.R. Part 5, and 36 C.F.R. § 5.5, and enjoining prosecution and the imposition or criminal liability thereunder;

C.    An award to Plaintiff of costs and reasonable attorneys' fees incurred in this action; and

D.    Such other and further relief as the Court deems just and proper.

DATED:  December 9, 2019.

By:     /s/ Robert Corn-Revere
        Robert Corn-Revere (DC Bar #375415)
        bobcornrevere@dwt.com
        Ronald G. London (DC Bar #456284)
        ronnielondon@dwt.com
        DAVIS WRIGHT TREMAINE LLP
        1919 Pennsylvania Ave., N.W., Suite 800
        Washington, D.C. 20006
        Telephone:  (202) 973-4200

        Counsel for Plaintiff